985 F.2d 584
 NOTICE: Federal Circuit Local Rule 47.8(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
DAVEY COMPRESSOR COMPANY, Appellant,
v.
Dick CHENEY, Secretary of Defense, Appellee.
 No. 92-1176.
 United States Court of Appeals, Federal Circuit.
 Dec. 17, 1992.
 
 Before RICH, Circuit Judge, EDWARD S. SMITH, Senior Circuit Judge, and ARCHER, Circuit Judge.
 PER CURIAM.
 
 DECISION
 
 1
 Davey Compressor Company (Davey) appeals the October 7, 1991 decision of the Armed Services Board of Contract Appeals (ASBCA), which held: (1) that two claims filed by Davey with the Defense Logistics Agency (DLA) had not been properly certified under section 33.207(c)(2) of the Federal Acquisition Regulations (FAR), the implementing regulations for the Contract Disputes Act (CDA), 41 U.S.C. § 601, et seq.; and (2) that, because the claims had not been properly certified, the ASBCA lacked jurisdiction over the claims. We reverse and remand this case to the ASBCA for consideration on the merits of the DLA's March 1, 1989 decision denying Davey's claims.
 
 DISCUSSION
 
 2
 * On August 24, 1988, Davey filed two claims with the DLA, which were certified by Carl Wurtz, Davey's Vice-President of Finance and Secretary/Treasurer. The DLA issued a decision denying these claims on March 1, 1989, and Davey appealed the DLA's decision to the ASBCA. On October 7, 1991, the ASBCA held that Wurtz did not have overall responsibility for the conduct of Davey's affairs, and therefore, Wurtz lacked authority to certify the claims on behalf of Davey. Accordingly, the ASBCA dismissed both of Davey's claims for lack of subject matter jurisdiction.
 
 II
 
 3
 This Court's jurisdiction over appeals from decisions of boards of contract appeals arises under 28 U.S.C. § 1295(a)(10), and this Court's review of such decisions is limited by the CDA. A Board decision on an issue of fact will not be set aside unless it "is fraudulent, or arbitrary, or capricious, or so grossly erroneous as to necessarily imply bad faith, or if such decision is not supported by substantial evidence." 41 U.S.C. § 609(b) (1988). On questions of law, however, Board decisions are neither final nor conclusive, but are freely reviewable." American Elec. Labs., Inc. v. United States, 774 F.2d 1110, 1112 (Fed.Cir.1985).
 
 III
 
 4
 The CDA requires that, for a claim against the government totaling more than $50,000:
 
 
 5
 the contractor shall certify that the claim is made in good faith, that the supporting data are accurate and complete to the best of his knowledge and belief, and that the amount requested accurately reflects the contract adjustment for which the contractor believes the government is liable.
 
 
 6
 41 U.S.C. § 605(c)(1) (1988). Davey is seeking $1,135,285.82 from the government, and therefore proper certification is required. United States v. Grumman Aerospace Corp., 927 F.2d 575, 578 (Fed.Cir.1991); W.M. Schlosser Co. v. United States, 705 F.2d 1336, 1338 (Fed.Cir.1983).
 
 
 7
 Section 33.207(c)(2) of the FAR limits the corporate officials who may certify a claim to:
 
 
 8
 (i) A senior company official in charge at the contractor's plant or location involved; or
 
 
 9
 (ii) An officer or general partner of the contractor having overall responsibility for the conduct of the contractor's affairs.
 
 
 10
 FAR 33.207(c)(2), 48 C.F.R. § 33.207(c)(2) (1990). Failure to comply with section 605(c)(1) of the CDA and its implementing regulations deprives the Board of jurisdiction to hear the claim. Grumman Aerospace, 927 F.2d at 579; see Ball, Ball & Brosamer, Inc. v. United States, 878 F.2d 1426, 1428 (Fed.Cir.1989).[1]
 
 
 11
 Davey does not argue in this appeal that Wurtz satisfied the requirements of FAR 33.207(c)(2)(i) at the time he certified the claims at issue. Therefore, that portion of the regulation is not under consideration. Rather, at issue in this appeal is whether Wurtz satisfied the second prong of the regulation, FAR 33.207(c)(2)(ii), at the time he certified the claims.
 
 IV
 
 12
 As part of its review, the ASBCA made the following factual determinations regarding Wurtz's status at Davey at the time that he certified the two claims:
 
 
 13
 (1) Wurtz was the "no. 3" man in Davey's corporate hierarchy of six officers, below the two owners of Davey, Theodore Purvin, who was also the president and chief executive officer, and Thomas Purvin, who was also the vice president of operations;
 
 
 14
 (2) Wurtz "acted for" Davey in the absence of the two owners; and
 
 
 15
 (3) Wurtz was in charge of the accounting functions of Davey, as well as insurance matters, tax matters, and legal issues as they affected the company.
 
 
 16
 In addition to the foregoing, trial testimony indicated that Wurtz was authorized to sign contracts on behalf of Davey and that he also was responsible for executing Truth in Negotiating certificates on Davey's behalf.
 
 
 17
 Despite the foregoing, the ASBCA concluded that there was "no evidence that Mr. Wurtz was overall responsible for [Davey's] operations or business affairs." The ASBCA further stated that "although Mr. Wurtz could act for the corporation in the absence of its two higher officers," Wurtz had failed to suggest or prove that these superiors were absent on the day he certified the two claims.
 
 V
 
 18
 The ASBCA erred in refusing to recognize Wurtz as an appropriate person to certify Davey's claims pursuant to FAR 33.207(c). As an elected senior executive officer of Davey, who was the "number 3 man" in the corporate hierarchy and who possessed the authority to sign contracts, to handle its legal and financial affairs, and to run the company in the owners' absence, Wurtz satisfied the requirements of FAR 33.207(c)(2)(ii). The ASBCA's analysis of Wurtz's functions was overly restrictive.
 
 
 19
 The ASBCA found, as a factual matter, that Wurtz "acted for" Davey in the absence of the two owners, who were the two higher ranking officers above Wurtz. Thus, notwithstanding Wurtz's numerous duties and responsibilities on a day to day basis, Wurtz was vested with the authority to manage or conduct Davey's overall affairs. There is no evidence that this authority was granted or taken away depending upon the absence or presence of the two owners. Indeed, the evidence merely establishes that Wurtz exercised this authority in the absence of the owners.
 
 
 20
 Because the evidence establishes that Wurtz possessed the authority to manage Davey's overall affairs and that he exercised this authority in the owners' absence, we find that Wurtz was an officer "having overall responsibility for the conduct of [Davey's] affairs." Accordingly, Wurtz was a proper individual to certify the claims at issue, pursuant to FAR 33.207(c)(2)(i). Thus, the ASBCA erred when it dismissed these claims for lack of jurisdiction.
 
 
 21
 As stated in Universal Canvas, Inc. v. Stone, 975 F.2d 847, ---- (Fed.Cir.1992), the purpose of the certification requirement in the CDA was "to ensure to the greatest possible extent that fraudulent, inflated and frivolous claims against the government are not presented." Thus, the requirement was intended to be a protective shield against false claims, not as a powerful weapon used to inhibit the submission of claims and the payment of otherwise just debts. Furthermore, there is no evidence that Congress intended the certification requirement to result in a chief-executive-officer-only rule or to require the certifier to be the person in the company with authority to overrule actions taken by every other individual in the company. Our holding in this case clearly follows Congress' intent in enacting the CDA.[2]
 
 
 22
 This case also differs from prior claim certification cases decided by this Court, in that Wurtz's responsibilities as the "number 3 man" of Davey, whose duties included being in charge of the company in the owners' absence, far exceeded those found in previous cases. For example, in Ball, the individual who attempted to certify the claim was neither a corporate officer, nor a general partner of the corporation, and his authority as Chief Cost Engineer was limited to the supervision and administration of the cost and claim aspects of corporate contracts. Similarly, the functions of the individual who attempted to certify the claim in Grumman were limited to financial affairs, and the responsibilities of the individual who attempted to certify the claim in Newport News were limited to accounting activities. Accordingly, unlike Wurtz, none of the foregoing individuals possessed "overall responsibility" for the conduct of their respective corporations.
 
 VI
 
 23
 Davey also has raised two additional issues on this appeal, namely: (1) whether the ASBCA erred in relying on, and applying retroactively, an allegedly new interpretation of the CDA certification requirement; and (2) whether the ASBCA erred in not taking jurisdiction of Davey's claims based on a regulation which, allegedly, improperly restricts the CDA claim certification requirement. In view of our holding of proper certification, we need not address these additional issues.
 
 COSTS
 
 24
 Each party to bear its own costs.
 
 
 25
 ARCHER, Circuit Judge, dissenting.
 
 
 26
 I dissent from the majority opinion because in my view this case is essentially indistinguishable from Grumman Aerospace Corp. v. United States, 927 F.2d 575 (Fed.Cir.1991).
 
 
 27
 Mr. Wurtz, the Vice President for Finance and Secretary/Treasurer, was the number three officer in this small company. While the board found that Wurtz could act for the corporation in the absence of its two higher officers, it also found that he "had no management responsibility whatsoever for [Davey's] business or operations" (emphasis added) and that his responsibility was for "financial and legal affairs." The board also noted that Davey did not suggest, let alone prove, that the superior officers were absent at the time the claims were executed. The board concluded that Davey had failed to carry its burden of establishing jurisdiction.
 
 
 28
 The majority relies heavily on the board's statements that Wurtz "could act" or "acted for" the corporation in the absence of the two superior officers. On how many occasions and with what frequency the two superior officers were absent, and how often during these periods Wurtz actually took or was required to take any corporate action other than in the financial, accounting and legal areas for which he was primarily responsible, does not appear in the record. Thus, there is no evidence that impugns the board's factfinding that Wurtz "had no management responsibility whatsoever." We may not overturn factfindings that are supported by substantial evidence. 41 U.S.C. § 609(b).
 
 
 29
 Under these circumstances, I must conclude that our decision in Grumman is controlling and that the board properly concluded that it lacked jurisdiction.
 
 
 
 [1]
 On October 29, 1992, President Bush signed into law S 1569 (P.L. 102-572). Section 907(a) of S 1569 amends Section 605(c) of the CDA to provide in pertinent part that:
 (1) the certification required under the CDA may be executed "by any person duly authorized to bind the Contractor with respect to the claim;"
 (2) a defect in the certification of a claim does not deprive a court or board of contract appeals of jurisdiction over the claim; and
 (3) the foregoing amendments apply to claims filed before, on, or after the date of the enactment of S 1569, except those claims that have been the subject of an appeal to a board of contract appeals or a suit in the U.S. Court of Federal Claims.
 In view of item (3), this Court must determine this case on the basis of the laws and regulations in effect at the time that Wurtz certified the claims at issue, as outlined supra.
 
 
 [2]
 In this regard, the recent enactment of S 1569, discussed supra, further evidences that Congress never intended the narrow reading of the CDA argued by the ASBCA